Your Honor, this is the second case of the morning, call 208. Tentative team, Full House Productions, Inc. v. American National Bank and Trust, et al. On behalf of the Appellant, Mr. Steven R. Merican. On behalf of Namington Investment Partnership and Power Crossing Associates, Mr. Thomas E. Sullivan. On behalf of Metropolitan Light Insurance Company, Mr. Steven P. Mandela. Good morning, Counsel. Any position you're comfortable with. If you want to sit down or stand up, whatever you want to do is fine with us. Thank you, Your Honor. I prefer to stand. Okay. Sorry we're running late. We were having a discussion of chronic tardiness, actually. It's the weather and the traffic. Good morning, Your Honors. I'm representing Full House Productions, Inc. and doing business as shapes, barring billiards. Your Honors, we have four arguments that are in favor of reversal, all of which I believe merit your consideration. And I'd like to focus really on two or perhaps maybe three of them right now. The first is what I would just call the as-is argument. As-is refers to the manner in which the lease was constructed and we rented the subject space. We rented it as-is. The as-is condition of the space as we rented it contained a men's restroom. Where did it contain the men's restroom? Where? There was a space that was approximately 3,600 square feet. That is the retail space that shapes had. The restroom was adjacent to the ladies' restroom, and that was adjacent to that retail space. It was 400 and some odd square feet of space. There was a foyer there. The restrooms were used by both retailers there, and it was adjacent to, directly next to the retail space that shapes used. And the retail space, the other retail space was being rented by someone by the name, was it Bacinos or something to that effect? Right. The next-door neighbor was a pizza place called Bacinos. And was the pool house or the pool hall paying rent to Bacinos for that space? Not rent, no. The only rent that we paid was to the landlord. What did you pay Bacinos? We paid Bacinos $250 a month, and that was for maintenance and cleaning of the restroom. That was it. There was no rental between shapes and Bacinos. So were we safe in saying that the women's restroom was in your space and the men's restroom was in Bacinos' space? They both. We paid rent to the landlord for both of those spaces. I do not know whether Bacinos was also paying rent to the landlord. I don't know whether they were getting rent from them as well. But I can tell you absolutely that that space was part of the rental, was part of the 4,100-some-odd square feet that we rented from the landlord. And Bacinos was able to use the women's restroom that was closer to your place? Yeah, they used that as well, yes. The lease was conditioned upon our entering into that agreement with Bacinos. And, in fact, we did that. And the landlord authorized it, he okayed it, and so the rental went on in that respect. Agreement between you and Bacinos with respect to what? You said the lease was conditioned upon an agreement between us and Bacinos. An agreement between shapes and Bacinos for co-use of the men's restroom. Okay, so the agreement was not between you and the landlord with respect to use of that bathroom, but you and Bacinos with respect to use of that bathroom. Right. The only place in the lease between shapes and the landlord where the restroom is referenced is that the lease stated that the agreement between shapes and Bacinos was a condition of the lease. And, in fact, we entered that agreement with Bacinos. And, in fact, the landlord okayed it. I'm a little confused. I thought you said a few moments ago that the restroom at issue was part of the space you leased from the landlord. Yes, it was. And that's in your lease? It is in the lease that we get 4,107 square feet, and that's included. That foyer area and that area where the two restrooms were comprise that 4,107 square feet. You've got 3,600 feet that only you and your customers use, and then to get to 41 you've got this bathroom that I would say is in a common area, but it's referenced in your lease. Yes, well, it's common only insofar as customers and employees of both retail operations used it. Right. Okay, so I was just a little confused to say that the whole thing is based on an agreement your client reached with Bacinos. I thought I heard you say it was also based on an agreement you made with the landlord, right? Well, we had a lease with the landlord, and in that lease it said that the lease is conditioned upon our entering into an agreement with Bacinos for co-use of that measure. Okay. Now, there was a January 30th, there was a temporary restraining order hearing, and at that time the plaintiff's attorney indicated to the court, and I'm going to quote this, so what I have here is a lease with a rider that says this lease is expressly contingent upon us getting access to the women's room, is located in our space, and the men's room, which is immediately adjacent to it, and the only access to which is through the hallway that's in our space. Is that a little different than what you're saying now? Yes, it is. I think it is different, and there is a dispute about exactly whether or not the ladies' room and the men's restroom were in whose space it was included. The only conclusion I make is that the landlord actually was getting rent from both of the parties for that space, for that is the foyer and restroom space, but I know that it was included in the 4,107 square feet that we leased. So why wasn't Pacino's paying you 250 a month with respect to that restroom? That was just the agreement that was worked out. It could have been worked out the other way as well. Pacino's was there first. They were taking care of the space, and the way it was worked out was that we would pay, and they would continue to do so, and we would just pay that $250 a month for cleaning and maintenance. Why is that statement that was made at the temporary restraining order hearing, why is that not a judicial admission? Well, I think plaintiffs said that. Oh, I'm sorry. I'm not following the question. I'm sorry. Well, I mean, that's what was said in court. That was what they represented, what the plaintiff represented with respect to the bathrooms. How is that not now to be used as a judicial admission? Well, I know that the complaint states the facts along the lines that I just described to you, and the discovery that we have to date also is in keeping with that. I'm not exactly sure in what context the plaintiff's lawyer at that time said those words, but that 4,107 square feet certainly is included in the space that we rented, and it also includes the restrooms. Thank you. The oral, the as-is argument is simply this. The space we rented included the men's room, the men's restroom, and it was a breach of the lease for the landlord to come in and wall off our access to that space, demolish it, rebuild it for another tenant, and then give it to a new tenant. That is the breach. The circuit court's order indicates a different kind of breach. The circuit court's order dismissed the complaint because the circuit court found the conflict between the lease and the allegations of the complaint, and specifically the conflict that the circuit court found was that the landlord was absolved from building a second men's room after walling off our access to the first. But that's not what the complaint asks for. Nowhere in the complaint will you find us allege that the landlord was responsible for building that second bathroom. Certainly that might have gone a long way toward mitigating their damages, but it is not what we allege as damage. The damage flows from the fact that we were paying rent for the men's restroom and then we were denied access to it, and that is what all the damage, at least with respect to the restroom issue, flows from. Is your position then that you were rented less space than you had contracted to lease? When the landlord took the bathroom, yes. When the landlord took the bathroom, that left us with less space, yet didn't change the amount of rent that they charged. We still paid for that 4,107 square feet, and there's no issue here but that we paid the rent. There are no facts, and certainly not in the complaint, and we are dealing with a motion to dismiss, so we're limited really to the facts left in the complaint. But there's nothing for us to consider really about actions that the landlord may have taken to cure the problem. But yet that's exactly what the circuit court did. The circuit court said there is a conflict because the landlord is absolved from building that second bathroom. Nonetheless, that's not the breach of lease that we allege, at least with respect to the restroom. And so, I'm sorry. Oh, nothing. So, the as-is argument, as I said, is simply that we leased the space with a men's room, and the landlord came in and took it away and left us in a condition that was different from the as-is condition that we rented. And that's a breach of the lease. I'm sorry. The trial court said that dismissing the case because the landlord didn't have an obligation to build a new men's room or a different one for your clients. What was the basis that the defendants argued to the trial court to dismiss the case? Completely different. Had nothing at all to do with the conflict between the lease and the complaint. Absolutely nothing. Tower Crossing and Mapleton, they made a motion that was primarily based on the language of the complaint. I don't know how else even to explain this. They have a very long motion that really is focused on complaining about the language in the complaint. They complain that it's vague. They complain that it's unclear. They complain a lot of different adjectives. Okay, and what is the basis the defendants are asserting on appeal to affirm the trial court? There are two bases that I see. One is a reiteration of that motion that Tower made. And, in fact, they just append the motion to the brief. The other has to do with the exculpatory clause that is in the lease. Now, that requires, let me back up a step and tell you that Metropolitan in the circuit court made a motion to dismiss the complaint based on exculpatory language that you find in the lease. And the court denied that motion. They are back before you in appeal asking for affirmance of the circuit court order on the basis that that motion should have been granted. They don't say it like that because they did not appeal from the denial of that motion. So they don't say it. What they do say is that, well, you have the power to affirm the circuit court on any basis in the record. And that's familiar law. I don't disagree with that statement. But it doesn't trump the fact that they made the motion in the circuit court that that motion was denied. And now they're back on appeal asking you to, in effect, reverse that order. And that they can't do. And I believe that deprives the appellate court of jurisdiction to consider the exculpatory clause issue. They didn't appeal. They didn't cross appeal. And now I think they have to live with that order from the circuit court. Thank you. That answers my question. I mean, you can ‑‑ your time, I don't think, is up. Do you have something else you want to say? Okay. The other point that I'd like to make has to do with the circuit court's order. And the fact that I believe the cases indicate that the conflict that the circuit court finds has to be obvious on the face of the documents. And by documents, I mean the complaint and, in this case, the lease. And that doesn't occur here. Is that my time? Yeah. Could you just ‑‑ you had indicated when you stepped up that there were four issues that you wanted to address. I'm not going to ask you to address three and four, but could you just tell us what three and four are? Sure. The third one was the one that I was just ‑‑ well, the third one was the one I was just beginning to address, which is the fact that the complaint that the conflict that the circuit court finds should be right on the face of the complaint and the exhibit, in this case, the lease. The second one has to do with what I call the non‑restroom issues. The what? The non‑restroom issues. And I think there are many, many of those in the complaint. Well, I know there are many, many of those in the complaint. They have nothing to do with the restroom. They have nothing to do with the conflict that the circuit court found. And I don't see how a dismissal based on a conflict involving the restroom has anything to do with those. And I certainly think it was error for the circuit court to dismiss those claims. The plumbing, the trash, fine. I think you delineated about eight or nine different things. Yes. Okay. And the last one, the fourth one, was the exculpatory clause that I thought was very important to address as well. That really addresses their defense, but it seems to me that it's really their only defense. Thank you. Okay, counsel, you'll have time on rebuttal. Thank you. Thanks, Jeff. Good morning. My name is Thomas E. Sullivan. I represent Tower Crossing Associates and Ableton Investment Partnership. Mr. Mandel, on behalf of Metropolitan, will also be speaking. I'll take roughly ten minutes. Mr. Mandel, roughly five, should we need it. I'd like to respond to several statements which counsel makes. Before you do that, and I'm sure you're going to be able to do that, I just want to make sure I get my frame of reference here. As I see this, and he argued in his statutes and notes I wrote ahead of time, the trial court ruled for the defendants on a basis not asserted by the defendants, and the defendants, in turn, argued to us to affirm on a basis not related by the trial court. Is that correct? I believe it's correct only in part, Justice. Okay. The motion to strike Tower and Ableton's motion to strike the seventh amended complaint contained roughly ten pages of detailed, specific allegations contained in the complaint which were unsupported by fact or which conflicted with other allegations in the complaint or in the exhibits. So the issue of allegations in the complaint being conflicting with other allegations in the complaint and exhibits was raised. The specific issue that the court focused on, that the trial focused on, that being the restroom agreement, was not something that was extensively argued, but it was argued in general with respect to the motion raising as objectionable and deficient in pleading conflicting effectively mutually exclusive allegations within the complaint. But then the trial court went on to dismiss every allegation in the complaint. Is that proper? I think it's proper when you've had eight tries at it without question. But did she find that every other allegation was not proper or just the restroom allegation? I thought she was focusing on that restroom allegation and never really addressed the other issues that counsel had brought up. I would agree. In the court's ruling, in the verbal ruling, the court did not specifically address literally if the court had addressed every specific allegation that was made with respect to deficiencies in the seventh amended complaint, the court would have been ruling for probably 45 minutes to an hour. Oh, well. Isn't that her job? I don't think she necessarily has to verbalize that ruling where she focuses on one issue and rests her decision on that issue. And I also believe that this court, certainly the law is clear, that this court can rest its affirmance on any matter that's contained in the record which supports the ruling, even if it's not consistent with the rationale of the court's ruling, the trial court's ruling. Did she find that all of the other issues that she dismissed along with the bathroom issue was vague or contained improper conclusions of law or didn't state a cause of action? She did not with respect to this ruling. That had been the ruling on specific occasions with respect to at least three of the prior amended complaints, and we've set that out also in the motion as well as in our brief, the fact that roughly 30, the first 30 paragraphs of the complaint were very consistent with prior allegations that had been stricken on prior motions with respect to the fifth, I believe with respect to the fourth and fifth amended complaints. As I recall, the sixth was voluntarily withdrawn. I do lose track of it sometimes. I do want to point out most importantly, one of the inconsistencies, the glaring inconsistency, our attack at the trial court level on this complaint, these myriad, many complaints, was that allegations were being made without factual support, and I believe that representations have been made in the plaintiff's argument today that, again, are not supported by the record. Most pertinently, the fact that the plaintiff contends now that there's no question that they were paying rent, and he goes so far as to say that the landlord was collecting rent for the restroom space from both Pacino's and from Full House Productions. There is absolutely no support in the record to stand behind that allegation. Quite to the contrary, Justice Shastak asked what I believe is to be the most pertinent question with respect to this issue of the restroom agreement, and that is were you paying rent to the landlord for this space or were you paying rent to Pacino's for this space? Counsel's response was that we were paying $250 to Pacino's, but it wasn't rent, that it was just for supplies and maintenance. The last page of the appendix to the brief of Tower and Napleton contains a legible copy of the restroom agreement. There had been a copy of the restroom agreement attached as an exhibit to the subcommittee complaint, but quite frankly, it was not legible. That legible copy clearly sets forth in the first paragraph foreign consideration of the payment by shapes of $250 per month to Pacino's Pizzeria and other good and valuable consideration that parties have agreed to share the restroom facilities, men's and women's restrooms, located between the two retail spaces. The landlord has delineated the spaces leased by the respective parties. As shown in the attached letter and drawing, that attached letter and drawing was not contained in the exhibit. This is one of the defects that we've alleged with respect to the plea, the fact that they would attach exhibits, but they would attach only parts of the exhibits. Had the drawing been attached, it would have clearly shown the situation. Pacino's was a pre-existing tenant that had its own men's and women's restroom. Subsequently, Full House rented an adjacent area. That adjacent space only had a women's restroom, and this is set out clearly in all the pleadings previously ruled upon by the court. Counsel, in that, you're reading the rental agreement, I mean the restroom agreement, right? That's correct. Doesn't it also say in there that the restrooms were leased to the plaintiff and the restaurant as tenants in common? It does say that as an agreement between these two tenants. The landlord was not a party to that allegation or that statement. The agreement says that going ahead of that, the landlord has delineated the spaces as issued to the respective parties and the restrooms were leased to plaintiff and the restaurant as tenants in common. So when it says the restrooms were leased to plaintiff and the restaurant, the leasing party there is the landlord, right? Let me clarify, Judge, and I don't know if you're looking at the first paragraph. The first paragraph indicates that the parties have agreed to share the restroom facilities located between the two spaces as tenants in common. Not that the landlord granted that to them. The fact of the matter is, under this agreement, which was a condition proceeding to the lease between the landlord and Full House Productions, that is, the lease was negotiated, the landlord indicated to Full House Productions, before we proceed, before we can finalize this lease, you must enter into a restroom-sharing agreement with Pacino's, who has pre-existing restrooms, with respect to the men's room. They only needed a men's room. They had a women's room in their space. They entered into that agreement between themselves and stated that they were going to... But how did they become tenants? It does say that they're tenants in common. It does, but only with respect to the agreement between Pacino's and Full House Productions is that they will share those facilities as tenants in common. The fact of the matter is, they were paying $250 rent to Pacino's, down at the bottom of the lease, the last provision of the lease, which refers to their obligation to pay supplies and maintenance obligations. Not the $250. It states, Pacino's shall make necessary repairs, basically to bring the bathrooms in a clean and operable condition prior to Full House making payments to Shapes. Thereafter, the parties shall share equally, repairs upon agreement, costs of remodeling or renovation. Payments for restroom cleaning services shall be made by Shapes to Pacino's, only when cleaning services are provided as stated herein, and upon Shapes' receipt of invoices from Pacino's. Their obligation to pay supplies and maintenance was separate and apart, in addition to their underlying obligation to pay rent to Pacino's of $250 a month for the use of that space. That restroom agreement is clear. If the landlord, upon the landlord's urging, these two would become tenants in common. That's what you're saying, correct? I'm saying that the landlord said, you go reach an agreement with Pacino's with respect to the use of Pacino's men's room because you don't have one. And if they didn't, what happens? If they didn't have one, we couldn't have proceeded with the lease. It was a condition proceeding to the lease proceeding. They're not in compliance with the contract. They entered into that restroom agreement with Pacino's, and as indicated by the record, Pacino's, several years later, subsequently breached their lease, defaulted on their lease, and their lease was terminated. Now, they couldn't enter into an agreement with Pancake House, the same type of agreement, because the landlord walled them off, correct? No, Pancake House didn't want to. Pancake House was not interested in sharing those facilities with anyone else. So then the whole house is in a different position with respect to their lease now. The lease has changed. The contract has changed. No, the lease didn't change. Their agreement that they were required to enter into